UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANNIE THOMPSON,
                Plaintiff,

-vs-                                                                                   Case No. 8:11-CV-01734-SPC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## ORDER

This matter comes before the Court on the Plaintiff, Annie Thompson's, Complaint seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. #1) filed on August 3, 2011. The Plaintiff filed her Memorandum of Law in support of the Complaint (Doc. #21) on March 14, 2012. The Commissioner filed a Memorandum of Law in Support of the Commissioner's Decision (Doc. #22) on May 14, 2012. The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

Plaintiff filed an application for a period of disability and disability insurance benefits on April 14, 2008. (Tr. 10). The claim was denied, initially, on May 30, 2008, and again upon reconsideration on November 14, 2008. (Tr. 10). Plaintiff then filed a request for hearing on December 3, 2008. (Tr. 10). On May 14, 2010, Glen H. Watkins, the administrative law judge ("ALJ"), held a hearing. After the hearing, the ALJ issued a decision denying the Plaintiff's

1

claim. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. (Tr. 1-3). Plaintiff has exhausted his administrative remedies. Therefore, this case is ripe for review under 42 U.S.C. § 405(g).

## *Plaintiff's History*

Plaintiff was born February 6, 1947, making her forty-nine years old at the time of the alleged onset date. (Tr. 29, 30). She has a high school education. (Tr. 29). Plaintiff's relevant past work includes work as an electronics supervisor, electronics inspector, and printed circuit board assembler. (Tr. 19). Plaintiff described her job as a work director for an electronics manufacturer. (Tr. 30,145). Specifically, Plaintiff oversaw nine to ten people at work. (Tr. 30). Plaintiff's job required her to "make sure [those under her] had work and if they finished...get them more work...." (Tr. 30). Additionally, Plaintiff set up work for employees and inspected that work for quality. (Tr. 145). However, Plaintiff has not worked since the alleged onset of disability. Plaintiff alleges disability due to degenerative disc disease, degenerative joint disease of the knee, and carpal tunnel syndrome. (Tr. 12).

## *Medical History*

Plaintiff visited orthopedist Dr. Antonio Castellvi who examined her musculoskeletal conditions. (Tr. 15). He evaluated Plaintiff in August 2007, for neck, lower back, and right arm and leg pain with weakness. (Tr. 15). After his observation, Dr. Castellvi observed that Plaintiff had normal gait and stood with no list. (Tr. 15). Upon further examination, Dr. Castellvi found no tenderness existed bilaterally and seated straight leg raise was negative bilaterally. (Tr. 15). Dr. Castellvi performed a bilateral motor, deep tendon reflex, sensory and pulse examination of Plaintiff, all of which were normal. (Tr. 15). That same month, Dr. Castellvi diagnosed Plaintiff with lumbar and lumbosacral intervertebral disc degeneration. (Tr. 15). Dr. Castellvi indicated

the Plaintiff could return to activity as she could tolerate it and referred Plaintiff to Dr. Howard Jackson for therapeutic blocks. (Tr. 15).

Dr. Jackson's notes indicate that Plaintiff's pain complaints varied since her reported alleged onset of disability in July 2007. (Tr. 15). Additionally, Dr. Jackson's notes indicate that Plaintiff walked with normal gait and stood with no list. (Tr. 15). Dr. Jackson diagnosed Plaintiff with displacement of lumbar intervertebral disc without myelopathy and thoracic or lumbosacral neuritis or radiculitis. (Tr. 15). Plaintiff received a prescription for an anti-inflammatory and was ordered to receive transforaminal steroid injections but could return to activity as tolerated. (Tr. 15).

Plaintiff underwent a follow-up examination in February 2008, which indicated that her lower back pain and right leg had improved since her last visit because of medication. (Tr. 15-16). However, in this examination, Plaintiff began to complain of increased neck pain. (Tr. 16). Dr. Jackson's physical examination indicated that Plaintiff's motor reflexes and deep tendon reflexes in her upper and lower extremities were normal. (Tr. 16). Yet, Dr. Jackson noted Plaintiff experienced midline low neck pain secondary to cervical discogenic pain and ordered an MRI of the cervical spine. (Tr. 16). Later in February 2008, Dr. Jackson noted that Plaintiff possessed no tenderness of the cervical spine and normal motor, deep tendon reflexes, and sensory testing. (Tr. 16). During this visit, Dr. Jackson noted that despite any existing pain or ailments, Plaintiff continued to work a regular job but could not return at the moment. (Tr. 16). Consequently, Dr. Jackson recommended that Plaintiff receive transforaminal steroid injections. (Tr. 16).

By September 2008, Dr. Jackson noted that claimant's neck and back pain had improved with a now mild pain level. (Tr. 17). Only a month later, Plaintiff reported that she had eighty

(80) percent improvement in her right knee. (Tr. 17). When Plaintiff experienced a flare-up in December 2008, Dr. Jackson reported that Plaintiff had not gone to physical therapy. (Tr. 17). Nevertheless, Dr. Jackson still found that Plaintiff had normal bilateral movement. (Tr. 17).

In November 2009, Plaintiff visited Dr. Edward Bass, a neurologist, for a neurological consultation. (Tr. 17). Dr. Bass noted Plaintiff had some discomfort but did not demonstrate focal motor weakness in either her upper or lower extremities. Dr. Bass found that Plaintiff had a history of neck problems, which worsened when she used a microscope a lot at work. (Tr. 17). In his last follow-up notes, Dr. Bass opined that Plaintiff's pain in her arm and neck had eased up and that physical therapy helped her. (Tr. 17). Accordingly, Dr. Bass found that Plaintiff's multiple musculoskeletal conditions did not impose severe limitations on Plaintiff, allowing her to perform light work. (Tr. 17).

*Hearing Testimony*

In reaching his determination, the ALJ considered testimony from an impartial vocational expert, Dr. Steven Simon. (Tr. 19). The ALJ asked Dr. Simon hypothetical questions, which involved an individual with the same age, education, and past relevant work as Plaintiff. (Tr. 19). Dr. Simon testified that given Plaintiff's residual functioning capacity, she could perform past relevant work as a "supervisor, electronics production," an "electronics inspector" and "printed circuit board assembler." (Tr. 19). The ALJ found Dr. Simon's testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. 19). Dr. Simon's testimony affirms this, as he answered "Yes" when asked by the ALJ whether his testimony is consistent with the DOT. (Tr. 46).

*Administrative Law Judge's Decision*

After careful consideration of the record and all the evidence, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 30, 2007, through the date of this decision. (Tr. 10). In reaching this decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act on December 31, 2011. The ALJ found that Plaintiff had not engaged in substantial gainful activity from November 30, 2007, through his last date insured of December 31, 2001. (Tr. 10).

Through the last date insured, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease of the knee, and carpal tunnel syndrome. (Tr. 12). However, none of these impairments or combination thereof met or medically equaled the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 13). In reaching this determination, the ALJ paid particular consideration to 1.00ff and 11.00ff, which deals with the musculoskeletal and nervous system. (Tr. 13). Accordingly, the ALJ found that from the alleged onset date through the date last insured, Plaintiff had a residual functioning capacity to perform a full range of light work as defined in 20 CFR 404.1567(b). (Tr. 13).

Because of Plaintiff's ability to engage in light work, the ALJ found Plaintiff capable of performing past relevant work as an "supervisor, electronics production," an "electronics inspector" and "printed circuit board assembler." (Tr. 19).

## THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Commissioner, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F.

2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[1] 20 C.F.R. §§ 404.1520(a), 404.920(a). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838–39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

---

[1] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
    *Step 1*. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
    *Step 2*. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
    *Step 3*. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
    *Step 4*. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
    *Step 5*. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f).

The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F. 3d at 1240 n.8; Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1439 (11th Cir. 1997).

## **DISCUSSION**

Plaintiff alleges that the ALJ committed the following errors for which remand is appropriate: (1) the ALJ failed to fully and adequately consider all of the evidence of record; (2) the ALJ relied upon the flawed testimony of the VE; and (3) the ALJ failed to adequately show that legal proper principles and standards had been followed. The Court will consider each of these issues in turn.

### 1. *Whether the ALJ Failed to Fully and Adequately Consider all of the Evidence of Record*

In his decision, the ALJ found that Plaintiff could return to work as a "supervisor, electronics production," an "electronics inspector" and "printed circuit board assembler." (DOT 726.130-010) (Tr. 19). Plaintiff first argues that the finding that this job was the past relevant work of the Plaintiff was incorrect. Plaintiff asserts that her past work, as described by the Plaintiff in documentary and oral testimony, was considerably different from the position as described in the Dictionary of Occupational Titles, cited by the ALJ. Plaintiff further asserts that the position of "supervisor, electronics production" was only one part of a composite job and, as such, cannot be considered past relevant work.

In documents submitted, the Plaintiff described her job as:

I directed employees in work activities within the plan. I set up work for the employees. I inspected products for quality. I filled out forms when the products did not meet quality specifications. I entered information into the computer system. (Tr. 145).

In the Disability Report, Plaintiff asserted that she lifted and carried electronics, racks, and paperwork and that the heaviest lifting was 25 pounds, that she frequently lifted 20 pounds and that she supervised 7-10 people, though the time supervising was a small part of the day, that she did not hire and fire employees, and that she considered herself a lead worker. (Tr. 145-146, 175). In the Report, Plaintiff's job title was "Work Director." At the hearing, the plaintiff described her job as follows:

> It was an assembly place for computer boards. I was over some, like nine to ten peoples. I did inspection. I had to deliver their work. They was spread all out. I had to walk here and there to keep up with them, you know, and make sure they had work and if they finished some work I had to take it to the next destination and push it around. And then I had to get them more work for them to do. (Tr. 30).
>
> Q Were you in charge of hiring or firing?
> A No.
> Q You weren't aloud (sic) to hire or fire?
> A No.
> Q Were you aloud (sic) to suspend people?
> A No.
> Q Did you set schedules?
> A No.
> Q Okay. You did some of the actual –
> A I had to do the work, yes I did.
> Q Okay. You had to pick up stuff and drag it around.
> A I sure did.
> Q But if you were a supervisor, why didn't you have someone else pick it up and grab it?
> A I couldn't do that. Because that's why they gave me as Work Director.
> Q Okay, so that was your task.
> A Right. It's not directing. It's work. Light work as they did.
> Q Okay. So, you did the same job as other people did?
> A Yes. Uh-huh.
> Q Okay. Ms. Thompson, when you were working circuit boards, and I did note in the records, they were various sizes?
> A Yes, there are.
> Q. Would they be on a table like this?
> A No.
> Q What would they be on?
> A They'd be on a rack.
> Q Okay.

8

> A And you'd have to pull them from the rack, like this.
> Q And where did you pull it when you pulled it from the rack?
> A You put it back into the rack.
> Q Where did you put it when you were working on it?
> A You had to put it on the table and you to taken em, because you're looking under a microscope, like this, and you had to turn your board, flip it, in order to make sure that there is nothing wrong with the board.
> Q Okay. So you used a microscope to do that?
> A Yes, we did. (Tr. 35-37)

Based upon the record evidence the ALJ concluded that Plaintiff's past relevant work was properly characterized as "supervisor, electronics production." (Tr. 19). Plaintiff argues that a sharp contrast exists between her work as a work director and the DOT definition of "supervisor, electronics production." (Doc. # 21, p. 10–11). Plaintiff maintains in her Brief that she was just like every other worker but with a few more responsibilities. (Id. at 10). Consequently, Plaintiff argues that her position as work director is best characterized as "lead worker" rather than "supervisor" under the DOT.

When Plaintiff listed all jobs she had in the last fifteen (15) years she, under "job title," wrote work director. (Tr. 145). When describing the job's responsibilities, she wrote that "I directed employees to work activities within the plant. I set up work for the employees. I inspected products for quality. I filled out forms when the products did not meet quality specifications. I entered information into the computer system." (Tr. 145). In her testimony, Plaintiff corroborated this description when she stated that "I was over…like nine to ten people" and that she had to "make sure they had work… [a]nd then I had to get them more work for them to do." (Tr. 30).

Upon review of the record, the Court notes that Plaintiff's job falls within the DOT's definition of "supervisor, electronics production." The DOT describes, in pertinent part, a "supervisor, electronics production" as someone who: "coordinates activities of workers engaged

in fabricating, assembling, testing, inspecting, and repairing electronic products, systems, subassemblies, components, or parts." Dictionary of Occupational Titles: Supervisor, Electronics Production (726.130-010). The description further provides that the individual "distributes work assignments" and "examines products for defects, utilizing knowledge of manufacturing and quality standards, to ensure conformance to product specifications." Id. These job characteristics fall within the DOT's definition of electronics production supervisor as found by the ALJ. (Tr. 30, 145) (726.130-010). Consequently, the ALJ assignment of "supervisor, electronics production" as Plaintiff's past relevant work is supported by substantial evidence.

Further, in contesting the ALJ's classification of Plaintiff's past relevant work as "supervisor, electronics production," Plaintiff contends that the ALJ failed to develop the physical requirements of her past relevant work thereby preventing a determination as to whether she could, in light of her ailments, perform such past relevant work. ((Doc. # 21, p. 12).

In reaching his decision, the ALJ applied a five-step sequential evaluation process dictated by the regulations. See 20 C.F.R. §404.1520(a) (4). At step four, the ALJ must determine whether the plaintiff can perform her past relevant work. Turner v. Astrue, 2009 WL 804676, *6 (M.D. Fla. 2009). The ALJ must "'fully investigate and make explicit findings as to the physical demands of the claimants past relevant work and compare that with what the claimant herself is capable of doing before [determining whether] she is able to perform her past relevant work.'" Id. (quoting Nimick v. Sec'y of Health & Human Servs., 887 F. 2d 864, 866 (8th Cir. 1989)). Although the plaintiff bears the burden of demonstrating an inability to return to past relevant work, the ALJ has an obligation to develop a full and fair record. Turner, 2009 WL 804676 at *6; see also Schnorr v. Bowen, 816 F. 2d 578, 581 (11th Cir. 1987) (citing Nelms v.

Bowen, 803 F. 2d 1164, 1165 (11th Cir. 1986)); Cowart v. Schweiker, 662 F. 2d 731, 735 (11th Cir. 1981)).

SSR 82-62 requires that the ALJ obtain sufficient evidence to make a determination as to whether a claimant has the residual functioning capacity to perform the physical and mental demands of her past work. SSR 82-62. If the ALJ finds the plaintiff has the capacity to perform past work, the determination must contain: "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC would permit a return to past work." Saunders v. Astrue, 2008 WL 821939, *9 (M.D. Fla. Mar. 26, 2008). A finding that a plaintiff can perform past relevant work is appropriate if evidence shows, the plaintiff, given her RFC, can (1) perform the duties and demands of a past job or (2) perform the demands and duties of a past relevant job as required by employers generally in the economy based on the DOT or other similar source. See Schnorr, 816 F. 2d at 578; see also Social Security Ruling ("SSR") 82-61; Social Security Ruling ("SSR") 82-62.

The ALJ developed a full and fair record before determining that Plaintiff could perform past relevant work. In the record, the ALJ elicited from Plaintiff the duties and demands of her job as "work director." The ALJ asked:

> Q. Okay. Describe what was your job?
> A. It was an assembly place for computer boards. I was over some, like nine to ten peoples. I did inspection. I had to deliver work. They was [sic] spread all out. I had to walk here and there to keep up with them, you know, and make sure they had work and if they finished some work I had to take it to the next destination and push it around. And then I had to get them more work for them to do.

(Tr. 30). Plaintiff's attorney questioned Plaintiff further on the physical demands of her job. In response to this questioning, Plaintiff testified that she "had to pick up stuff and drag it around"

or "pull [circuit boards] from the rack… [and] put it back into the rack." (Tr. 36). Plaintiff described this workload as "[l]ight work." (Id.). In addition to these responsibilities, Plaintiff testified that she used a microscope at work, which required up and down head motion. (Id.).

Based on these findings, the ALJ found Plaintiff capable of performing work as:

1. Electronics Production, Supervisor…which is considered light, skilled work;
2. Electronics Inspector…which is considered light, skilled; and
3. Printed Circuit Board Assembler…which is considered light, semi-skilled work.

(Tr. 19). Before finding that Plaintiff could perform past relevant work, the ALJ compared Plaintiff's residual functioning capacity ("RFC") with the physical and mental demands of her past work. (Id.). By considering the physical demands of each of the aforementioned positions and by eliciting testimony from Plaintiff as to the physical demands of her job as "work director," the Court finds that the ALJ developed a full and fair record and the ALJ determined that Plaintiff could perform her prior work, as listed above.

## 2. *Whether the ALJ Relied Upon the Flawed Testimony of the Vocational Expert*

Plaintiff next argues that the information given by the Commissioner to the VE at the hearing, and the response that the testimony was consistent with the DOT, was flawed, because as discussed above, the characterization of Plaintiff's past relevant work as "electronics production, supervisor" was incorrect. Specifically, Plaintiff argues that given the testimony of the Plaintiff regarding the duties of her work which she testified to at the hearing, the job of "electronics production, supervisor" should have been stricken. In failing to do so, the VE misled the Commissioner as to the consistency of the vocational testimony and the DOT.

In determining that Plaintiff was capable of performing past relevant work, the ALJ called upon the testimony of an impartial VE. The VE testified as follows:

Q. Alright, Dr. Simon. Do you need me to redo the hypothetical or do you have it down?
A. No. I just need to look up the selected terms from the occupations on the list.
Q. Okay.
A. Okay. The answer is the – You asked me to go ahead?
Q. Yes.
A. The answer to that would be yes. All three jobs at supervised electronic production is light per the DOT but according to what she indicated in her documentation, she actually performed that at the medium skill level.
Q. That's the supervisor, the job you initially identified?
A. Yeah. Right.
Q. So, the Electronic Inspector and the Printed Circuit one you identified today are both light, as performed and –
A. Well, we didn't get into "as performed," the light per the DOT.
Q. Okay. The second hypothetical, what I'm going to do is keep the same as the first, however, the fingering and gross manipulation, I am going to change from frequent to occasional.
A. In that case that hypothetical person would not be able to do any of these actually.
Q. And she grades out that she can't do past level work, anyway? Are there any transferrable skills?
A. What they will be is to assembly occupations, both at the light and sedentary level, but they will require more than occasional and gross –
Q. On the fingering, limitation of the occasional fingering and she can't do even work that she would be natural (sic) able to transfer in to?
A. That's correct.
Q. Okay. What publications or references do you rely on in forming your opinions?
A. I use the Occupational Employment Statistics from the U.S. Department of Labor. I use the Department of Census Data, Impression from the Occupational Outlook Handbook and other government publications, plus my experience, plus other survey information.
Q. Is your testimony consistent with the DOT?
A. Yes.

(Tr. 44-46).

Plaintiff's attorney then went on to question the VE about the supervisory position:

Q. Okay. Right. Was that actually a supervised job. Or did it seem like a lead worker job to you?
A. Yeah, that was the best DOT, the best vocation I could find for that. She did supervise, I believe ten to twenty people. Let's see. She supervised seven to ten people in that job.
Q. Uh-huh. ….

(Tr. 47-48).

Given the testimony elicited, the Court does not believe the ALJ relied upon flawed testimony of the VE. The VE was asked to base his testimony on a hypothetical individual with the same age, education, and past relevant work as the Plaintiff. The VE testified that, given the RFC detailed by the ALJ, such an individual was able to perform her past relevant work as:

1. Electronics Production, Supervisor…which is considered light, skilled work;
2. Electronics Inspector…which is considered light, skilled; and
3. Printed Circuit Board Assembler…which is considered light, semi-skilled work.

In this case, as discussed above, the classification of Plaintiff's past relevant work as "electronics production, supervisor," was based upon substantial evidence. Further, the Plaintiff's attorney himself questioned whether the DOT classification was a supervised job, to which the VE said that was the best classification based upon the evidence in the record. No further testimony on this point was elicited by the Plaintiff's attorney from the VE. The Eleventh Circuit has held that when the VE's testimony conflicts with the DOT, the VE's testimony trumps the DOT. Miller v Commmissioner, 246 F. App'x. 660, 662 (11th Cir. Aug. 31, 2007) (citing Jones v. Apfel, 190 F.3d 1224, 1229-1230 (11th Cir. 1999)). The VE's testimony controls because the VE's task is to determine whether there are jobs in the region, which the claimant can perform with his precise disabilities or limitations. Id. Therefore, an ALJ may rely on the VE's testimony even if it is inconsistent with the DOT. Jones, 190 F.3d at 1229.

Here no apparent conflict exists. The position, which the VE testified Plaintiff could return to, is consistent with Plaintiff's duties as a supervisor. As mentioned above, Plaintiff's job required her to oversee nine to ten employees. (Tr. 30). Plaintiff directed these employees to

work activities within the plant, set up work for employees and continually provided these employees with work. (Tr. 30, 145). As such, no apparent conflict exists between the VE's testimony that Plaintiff could return to work as an electronics supervisor and the DOT description of electronics production supervisor. Therefore, the ALJ's reliance on the VE's testimony was proper.[2]

Accordingly, it is now

**ORDERED**:

The Decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and **CLOSE** the file.

**DONE AND ORDERED** at Fort Myers, Florida, this 6th day of July 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record

---

[2] Plaintiff's last issue for which she argues the matter should be remanded is that the ALJ failed to adequately show that proper legal principles and standards had been followed. The Court finds that this issue has been addressed in the above analysis. The Court has found that the ALJ's decision was based upon and supported by substantial evidence in the record and otherwise supported by existing authority.